UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PUTNAM ENERGY HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7234 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| FRACXCHANGE.COM, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Individual defendant Martin C. Horn moves to dismiss plaintiff Putnam Energy Holdings' claims against him under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. For the following reasons, the Court denies Horn's motion.

**Background**

In November 2019, Putnam filed this diversity jurisdiction lawsuit alleging fraudulent concealment, intentional misrepresentation, civil conspiracy, and conversion based on defendants inducing Putnam to deposit $182,500 for future purchases of "Frac Sand" used in hydraulic fracturing oil and gas drilling operations. Putnam brings this action against defendants FracXchange, a Texas limited liability company that was involuntarily dissolved, and its officers Martin C. Korn, Chief Executive Officer, and Shane Henderson, Chief Operating Officer. Korn and Henderson were the only members of FracXchange.

Putnam asserts that the Court has specific personal jurisdiction over defendants because the parties' underlying agreement was negotiated in Westmont and Oak Brook, Illinois and that defendants committed tortious and fraudulent acts directed to Illinois. In particular, Putnam states that in May and July 2014 Henderson met with Putnam's representative, Terrence O'Malley, in Oak Brook, to induce Putnam to pay at least $182,500 to defendants as part of the underlying Frac Sand

agreement. During that time period, Henderson and Korn represented to O'Malley that they would hold the $182,500 deposit and apply it to future purchase orders. O'Malley then wired the money to defendants on July 24, 2014.

Further, Putnam alleges that it intended to sell Frac Sand to third parties for a profit, but defendants failed to make any Frac Sand available pursuant to the parties' contract and Putnam's requests. Defendants represented to Putnam that they would refund the $182,500 deposit by December 31, 2014, but failed to do so.

**Legal Standard**

A motion to dismiss under Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *Curry v. Revolution Labs., LLC,* 949 F.3d 385, 392 (7th Cir. 2020). Although plaintiffs bear the burden of establishing personal jurisdiction, when ruling on a Rule 12(b)(2) motion to dismiss based on the submission of written materials, a plaintiff need only make a prima facie showing of personal jurisdiction. *Id.*; *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). When the parties submit declarations concerning personal jurisdiction, the district court may weigh the declarations when evaluating whether the plaintiff has established its prima facie case. *Curry*, 949 F.3d at 393. If there is a factual conflict between the record and defendant's averments, courts resolve the conflict in plaintiff's favor. *Id.* In addition, when analyzing a Rule 12(b)(2) motion without conducting an evidentiary hearing, courts accept the well-pleaded, undisputed facts in the complaint as true. *Matlin*, 921 F.3d at 705.

**Discussion**

The Court's jurisdiction over plaintiff's state law claims is circumscribed by both Illinois law and federal due process. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.,* 965 F.3d 571, 575 (7th Cir. 2020). It is well-settled that "the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," thus the Court's inquiry

is whether the exercise of personal jurisdiction over the defendants comports with federal due process. *Curry*, 949 F.3d at 393 (citation omitted).

There are two types of personal jurisdiction – general and specific. *J.S.T. Corp.,* 965 F.3d at 575. Putnam seeks to establish specific jurisdiction over defendants. To show specific personal jurisdiction, a defendant's contacts with the forum state must be directly related to the challenged conduct. *Curry*, 949 F.3d at 395; *Matlin*, 921 F.3d at 705. As such, the Court's analysis focuses on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014).

In support of his motion, Korn sets forth two declarations averring that he did not enter into any discussions or negotiations with Putnam concerning the contract for Frac Sand, but rather that FracXchange's other officer and member, Shane Henderson, did. Also, Korn avers that he had no contact with anyone associated or affiliated with Putnam other than being introduced to Terrence O'Malley in Texas in December 2014. Korn asserts that prior to that, he did not travel to Illinois and that no business he has owned or been a manager or member of has engaged in soliciting business in Illinois. Korn's last statement is easily refuted because he admits that Henderson, on behalf of FracXchange, a limited liability company of which both Henderson and Korn were managing members, negotiated the contract between Putnam and FracXchange.

As to Korn's other averments, Putnam rebuts them by presenting correspondence Korn sent to Putnam in Illinois, including a pro forma invoice clarifying pricing and delivery terms dated July 23, 2014. In his second declaration, Korn avers that he prepared this pro forma invoice and order confirmation, in part, and that these documents were customarily prepared for FracXchange's prospective customers. This averment directly supports the fact that Korn participated in soliciting Putnam's business by reaching out to Putnam in Illinois. Moreover, Putnam presents a declaration by its representative Terrence O'Malley, in which he avers that he and Korn negotiated pricing and

3

delivery terms in July 2014 – as evidenced by the July 2014 pro forma invoice and attached email from Korn. Putnam also presents email correspondence from December 2014 and January 2015 that Korn directed to Putnam in Illinois O'Malley avers that the documents he attached to his declaration were kept in the normal course of Putnam's business.

At this stage of the proceedings, the Court may weigh the parties' declarations and the evidence presented to determine personal jurisdiction. *See Curry*, 949 F.3d at 393. In doing so, the Court notes that several of Korn's averments are refuted by his own admissions or by Putnam's declaration with attached emails and invoices. This evidence shows that Korn helped solicit Putnam's business in Illinois, took part in negotiating the pricing and delivery terms of the deal with Putnam in Illinois, and that he reached out to Putnam in Illinois over the course of the parties' dealings via emails – all factors that support the Court's personal jurisdiction over Korn under the circumstances. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Korn's argument that he did not travel to Illinois in connection with the underlying agreement for Frac Sand and that he has "never physically been in Illinois" is a non-starter. As the Supreme Court explained in *Burger King* over 35 years ago, "[i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476. In other words, "physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state," especially in the remote business climate of the last decade. *Curry*, 949 F.3d at 398. In sum, despite Korn's arguments to the contrary, his contacts with Illinois were not "random, fortuitous, or attenuated." *Curry*, 949 F.3d at 396 (citation omitted).

On a final note, Korn's arguments made for the first time in his reply brief are waived. *O'Neal v. Reilly,* 961 F.3d 973, 974 (7th Cir. 2020).

**Conclusion**

For these reasons, the Court denies Korn's Rule 12(b)(2) motion to dismiss based on the lack of personal jurisdiction [11]. Korn's answer is due on or before November 13, 2020.

**IT IS SO ORDERED.**

Date: 10/28/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge